# COMPOSITE EXHIBIT "A"





# NOTE

May 20, 2008                    Baldwin                    New York

[Date]                          [City]                     [State]

94 Garden City Ave, Point Lookout, NY 11569

[PropertyAddress]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 375,000.00          (thisamountiscalled"Principal"), plusinterest,totheorderoftheLender.TheLenderis          CitiMortgage, Inc.

IwillmakeallpaymentsunderthisNoteintheformofcash,checkormoneyorder.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitledtoreceivepaymentsunderthisNoteiscalledthe"NoteHolder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rateof    6.375      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) ofthisNote.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st          dayofeachmonthbeginningon    July 1, 2008          .Iwill make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest beforePrincipal.If,on     June 1, 2038          ,IstilloweamountsunderthisNote,Iwillpaythoseamountsinfullon thatdate,whichiscalledthe"MaturityDate."

I will make my monthly payments at   1000 Technology Drive, O' Fallon, MO  63368-2240

oratadifferentplaceifrequiredbytheNoteHolder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 2,339.51

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a paymentasaPrepaymentifIhavenotmadeallthemonthlypaymentsdueundertheNote.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthlypaymentunlesstheNoteHolderagreesinwritingtothosechanges.

NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-5N(NY) (0005)          Form 3233 1/01
VMPMORTGAGEFORMS-(800)521-7291
Page1of3          Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated asapartialPrepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15      calendardays afterthedateitisdue,Iwillpayalatechargetothe Note Holder. Theamountofthechargewillbe    2.000    %of myoverduepaymentofprincipalandinterest. Iwillpaythislatechargepromptlybutonlyonceoneachlatepayment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or deliveredbyothermeans.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above,theNoteHolderwillstillhavetherighttodosoifIamindefaultatalatertime.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expensesinclude,forexample,reasonableattorneys'fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holderanoticeofmydifferentaddress.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that differentaddress.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to payalloftheamountsowedunderthisNote.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the righttorequiretheNoteHoldertogivenoticetootherpersonsthatamountsduehavenotbeenpaid.

Form 3233
Initials:
CitiMortgage3.2.13.21V2

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

_____ (Seal)
Renee Tammaro                      -Borrower

*(Sign Original Only)*

_____

Pay to the order of

without recourse on us CitiMortgage, Inc.
F/K/A Citicorp Mortgage, Inc.
D/B/A Citicorp Mortgage, Inc in NM, on it's own
behalf or as Attorney-In-Fact for: Citibank FSB;
Citibank (New York State); Citibank (Nevada), NA;
Citibank, NA F/K/A Citibank (West) FSB

Janet L Sims, Senior Vice President
CitiMortgage, Inc.

Form 3233 1/01
CitiMortgage 3.2.13.21V2



NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 05-23-2008          Record and Return To:
Recorded Time:  2:18:34 p          CITIMORTGAGE INC
                                   ATTN: DOCUMENT PROCESSING
    Liber Book: M  33002           PO BOX 790021
    Pages From:      24            ST LOUIS, MO  63179-0021
           To:       42

    Control
    Number:  1732
     Ref #: CZ  009034
    Doc Type: M01  MORTGAGE

Location:                    Section Block    Lot    Unit
HEMPSTEAD (2820)             ███████████████████

Consideration Amount:        375,000.00

| | |
|---|---:|
| Taxes Total | 3,907.50 |
| Recording Totals | 92.00 |
| Total Payment | 3,999.50 |

DAC001

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
                    MAUREEN O'CONNELL
                    COUNTY CLERK



ReturnTo:
CitiMortgage, Inc.
Attn: Document Processing
P.O. Box 790021
St. Louis, MO 63179-0021

# ORIGINAL

PreparedBy:
CitiMortgage, Inc.
6300 InterFirst Drive
Ann Arbor, MI 48108

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE<sub>MIN</sub>

WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated May 20, 2008
togetherwithallRiderstothisdocument,willbecalledthe"SecurityInstrument."
(B) "Borrower." Renee Tammaro

whoseaddressis   5 Garden City Ave Point Lookout, NY 11569-

sometimeswillbecalled"Borrower"andsometimessimply"I"or"me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of 3300 S.W. 34th Avenue,
Suite 101, Ocala, FL 34474, P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. FOR
PURPOSES OF RECORDING THIS MORTGAGE, MERS IS THE MORTGAGEE OF RECORD.
(D) "Lender." CitiMortgage, Inc.

will be called "Lender." Lender is a corporation or association which exists under the laws of
New York                                        .Lender'saddressis    1000 Technology Drive, O'
Fallon, MO 63368-2240

| Section: | Block: | Lot: | Unit: |
|---|---|---|---|

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

WoltersKluwerFinancialServices
VMP ® -6A(NY) (0712)
Page1of17          Initials:

CitiMortgage3.2.13.21V2

**"Premises known as**
Section __61__ , Block __22__ , Lot __28__
as shown on The Nassau County
Land and Tax Map."

(E) "Note." The note signed by Borrower and dated  May 20, 2008                              ,willbecalled
the"Note."TheNoteshowsthatIoweLender        Three Hundred Seventy Five Thousand

                                                    Dollars(U.S.$  375,000.00
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
andtopaythedebtinfullby        June 1, 2038
(F) "Property." The property that is described below in the section titled "Description of the Property."
willbecalledthe"Property."
(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
latechargesdueundertheNote,andallsumsdueunderthisSecurityInstrument,plusinterest.
(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
RightsintheProperty"sometimeswillbecalledthe"SumsSecured."
(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders."ThefollowingRidersaretobesignedbyBorrower[checkboxasapplicable]:

| ☐ AdjustableRateRider | ☐ CondominiumRider | ☐ SecondHomeRider |
|---|---|---|
| ☐ BalloonRider | ☐ PlannedUnitDevelopmentRider | ☐ 1-4FamilyRider |
| ☐ VARider | ☐ BiweeklyPaymentRider | ☒ Other(s)[specify] |
| | | Schedule ``A'' |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable,judicialopinionswillbecalled"ApplicableLaw."
(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
associationorsimilarorganizationwillbecalled"CommunityAssociationDues,Fees,andAssessments."
(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions,transfersinitiatedbytelephone,wiretransfers,andautomatedclearinghousetransfers.
(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."
(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."
(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpaymentof,ordefaulton,theLoan.
(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and(ii)anyamountsunderSection3willbecalled"PeriodicPayment."
(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
relatedmortgageloan"underRESPA.

Form 3033 1/01
CitiMortgage3.2.13.21V2

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensionsandmodificationsoftheNote;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value ofthePropertyandLender'srightsintheProperty;and

(C)Keepallofmyotherpromisesandagreementsunderthis SecurityInstrumentandtheNote.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successorsandassigns)hastheright:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property;and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this SecurityInstrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property describedin(A)through(G)below:

(A)ThePropertywhichislocatedat        94 Garden City Ave

                                                                                                [Street]
Point Lookout                                   [City, Town or Village], NewYork     11569-      [Zip Code].
ThisPropertyisin    Nassau                                          County,Ithasthefollowinglegal
description:  See schedule "A" attached hereto and made a part hereof.


## PREMISES HEREIN ARE, OR WILL BE, IMPROVED
## BY A ONE OR TWO FAMILY HOUSE ONLY


(B) All buildings and other improvements that are located on the Property described in subsection (A) of thissection;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section.Theserightsareknownas"easementsandappurtenancesattachedtotheProperty;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property describedinsubsection(A)ofthissection;

Initials:

                                                                                        Form 3033 1/01
                                                                                        CitiMortgage3.2.13.21V2

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) ofthissection;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in thefuture;and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described insubsections(A)through(F)ofthissection.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for thosewhichareofpublicrecord.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts ofthecountry.Mypromisesandagreementsarestatedin"plainlanguage."

## COVENANTS

I promise and I agree with Lender as follows:

1. Borrower's Promise to Pay. I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts forEscrowItemsunderSection3ofthisSecurityInstrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, orentity;or(d)ElectronicFundsTransfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. Application of Borrower's Payments and Insurance Proceeds. Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First,topayinterestdueundertheNote;

Next,topayprincipaldueundertheNote;and

Next,topaytheamountsdueLenderunderSection3ofthisSecurityInstrument.

SuchpaymentswillbeappliedtoeachPeriodicPaymentintheorderinwhichitbecamedue.

Anyremainingamountswillbeappliedasfollows:

First,topayanylatecharges;

Next,topayanyotheramountsdueunderthisSecurityInstrument;and

Next,toreducetheprincipalbalanceoftheNote.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. Monthly Payments For Taxes And Insurance.

(a) Borrower's Obligations.

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

Initials:

Form 3033 1/01
CitiMortgage3.2.13.21V2

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limitedtotheloweramount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additionstoanddeductionsfromtheEscrowFundsandthereasonforeachdeduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requiresLendertopayinterestontheEscrowFunds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPArequiresLendertoaccounttomeinaspecialmannerfortheexcessamountofEscrowFunds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due,butthenumberofpaymentswillnotbemorethan12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that arethenbeingheldbyLender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, theword"Person"meansanyindividual,organization,governmentalauthorityorotherparty.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

Initials:

Form 3033 1/01
CitiMortgage3.2.13.21V2

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or moreoftheactionsmentionedinthisSection4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to makesuchacharge.

5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance. I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency foritsreview.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiumsandrenewalnoticesthatIreceive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgageeand/orasanadditionallosspayee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender maydoso.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

Initials:

Form 3033 1/01
CitiMortgage3.2.13.21V2

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining InsuranceProceedswillbepaidtome.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or thisSecurityInstrument,whetherornotthendue.

6. Borrower's Obligations to Occupy The Property. I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames setforthaboveifextenuatingcircumstancesexistwhicharebeyondmycontrol.

7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient torepairorrestoretheProperty,IpromisetopayforthecompletionofsuchrepairorrestoratIon.

(b) Lender's Inspection of Property.

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will givemenoticestatingareasonablepurposeforsuchinteriorinspection.

Initials:

8. **Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is justoneexampleofafalse,misleading,orinaccuratestatementofImportantinformation.

9. **Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the PropertyandLender'srightsunderthisSecurityInstrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actionsunderthisSection9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promisetopaythoseamountswithinterest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest andtheFeeTitlewillnotmergeunlessLenderagreestothemergerinwriting.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of thepreviousMortgageInsurancecoverage,andthealternatemortgageinsurerwillbeselectedbyLender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

Initials:

Form 3033 1/01
CitiMortgage3.2.13.21V2

VMP -6A(NY) (0712)

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. NothinginthisSection10willaffectmyobligationtopayinterestattherateprovidedintheNote.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurancepolicy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include MortgageInsurancepremiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of anyMortgageInsurancepremiumsthatwerenotearnedatthetimeofsuchcancellationortermination.

11. Agreements About Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are assignedtoandwillbepaidtoLender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, willbepaidtome.SuchMiscellaneousProceedswillbeappliedintheorderprovidedforinSection2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partialtaking,destruction,orlossinvalue.Anybalanceshallbepaidtome.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the MiscellaneousProceedswillbeappliedtotheSumsSecuredwhetherornotthesumsarethendue.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party againstwhomIhavearightofactioninregardtoMiscellaneousProceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) thatcoulddamageLender'sinterestinthePropertyorrightsunderthisSecurityInstrument."Forfeiture"is

a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, andwillbepaid,toLender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied intheorderprovidedforinSection2.

12. Continuation of Borrower's Obligations And of Lender's Rights.

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortizationoftheSumsSecured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under thisSecurityInstrument.

13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations. If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

Initials:

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms ofthisSecurityInstrumentortheNotewithoutthatPerson'sconsent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

14. **Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibitedbythisSecurityInstrumentorbyApplicableLaw.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive anyrighttobringalawsuitagainstLenderbecauseoftheovercharge.

15. **Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirementunderthisSecurityInstrument.

16. **Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument ortheNotewillremainasiftheconflictingprovisiondidnotexist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion withoutanyobligationtotakeanyaction.

17. **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18. **Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

Initials: 

Form 3033 1/01
CitiMortgage3.2.13.21V2

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this optionshallnotbeexercisedbyLenderifsuchexerciseisprohibitedbyApplicableLaw.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce itsrightsunderthisSecurityInstrumentwithoutgivingmeanyfurthernoticeordemandforpayment.

19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued. Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet thefollowingconditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the NoteasifImmediatePaymentinFullhadneverbeenrequired;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument;and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrumentcontinueunchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency,instrumentalityorentity;or(d)ElectronicFundsTransfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment inFullunderSection18ofthisSecurityInstrument.

20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance. The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receiveanypriornoticeofthesesales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the NotepurchaserunlessotherwiseprovidedbytheNotepurchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisionsofthisSection20.AllrightsunderthisparagraphanesubjecttoApplicableLaw.

21. Continuation of Borrower's Obligations to Maintain and Protect the Property. The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" meansaconditionthatcancause,contributeto,orotherwisetriggeranEnvironmentalCleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materialsareundisturbedand"non-friable"(thatis,noteasilycrumbledbyhandpressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordancewithEnvironmentalLaw.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS

IalsopromiseandagreewithLenderasfollows:

22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paidtoathirdpartyforservicesrenderedandthechargingofthefeeispermittedbyApplicableLaw.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibilityunderthelawtousetheamountinthemannerdescribedinthisSection24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☒ This Security Instrument covers real property improved, or to be improved, by a one or two familydwellingonly.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with eachdwellingunithavingitsownseparatecookingfacilities.

☐ ThisSecurityInstrumentdoesnotcoverrealpropertyimprovedasdescribedabove.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:



_____     _____ (Seal)
                                               -Borrower
                                               Renee Tammaro
                                               (Sign Original Only)

_____

STATE OF NEW YORK, $\cap$ assau           Countyss:

On the   $\partial$ O    day of $\eta \alpha \, u \, \partial OO\%$        beforeme, theundersigned, anotary publicinandforsaidstate, personallyappeared

Renee Tammaro

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), orthepersonuponbehalfofwhichtheindividual(s)acted, executedtheinstrument.

_____
Notary Public

TaxMapInformation:

JOAN SANDERS
NOTARY PUBLIC, State of New York
Nassau County No. 01SA4640335
Commission Expires March 30, 2010

Initials _____

Form 3033 1/01
CitiMortgage3.2.13.21V2

Form 91-88NY REV. 7-77

# Lawyers Title
## Insurance Corporation

**AMENDED: 4/24/2008**

**Title No.** ▮▮▮▮▮▮▮

## SCHEDULE A - DESCRIPTION

ALL that certain plot, piece or parcel of land with the buildings and improvements thereon

erected, situate, lying and being at Point Lookout, Town of Hempstead, County of Nassau and

State of New York, known as and by Lot No. 28 in Block 22 on map entitled "Map of Point

Lookout Beach", filed as Map No. 655, New Map No. 780 in the Office of the Clerk of the

County of Nassau on July 25, 1928, bounded and described as follows:

BEGINNING at a point on the Easterly side of Garden City Avenue, distant 130 feet Northerly from the corner formed by the intersection of the Easterly side of Garden City Avenue with the Northerly side of Beech Street;

RUNNING THENCE North 89 degrees 53 minutes 05 seconds East and at right angles to the Easterly side of Garden City Avenue, 60 feet;

THENCE North 06 degrees 55 minutes West and parallel with the Easterly side of Garden City Avenue, 35 feet;

THENCE South 89 degrees 53 minutes 05 seconds West, again at right angles to the Easterly side of Garden City Avenue, 60 feet to the Easterly side of Garden City Avenue;

THENCE South 06 degrees 55 minutes East along the Easterly side of Garden City Avenue, 35 feet to the point or place of BEGINNING.

**PREMISES HEREIN ARE, OR WILL BE, IMPROVED
BY A ONE OR TWO FAMILY HOUSE ONLY**

RECEIVED IN
THIS CONDITION

## ASSIGNMENT OF MORTGAGE

KNOW THAT, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for CITIMORTGAGE, INC. with offices c/o CitiMortgage, Inc., 1000 Technology Drive, O'Fallon, MO 63368, IN CONSIDERATION OF TEN DOLLARS ($10.00), PAID BY CitiMortgage Inc., with offices at 1000 Technology Drive, O'Fallon, MO 63368, ASSIGNEE, HEREBY ASSIGNS UNTO THE ASSIGNEE, THE FOLLOWING MORTGAGE:

Mortgage dated 5-20-2008, in the original principal amount of 375,000.00 made by Renee Tammaro to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for CITIMORTGAGE, INC., affecting the real property commonly known as 94 Garden City Avenue, Point Lookout, NY 11569, the "Premises") and recorded in the Office of the County Clerk/City Register of Nassau County on 5-23-2007 in LIBER 33002 PG 24.

SAID PREMISES BEING KNOWN AS 94 Garden City Avenue, Point Lookout, NY 11569
AND MORE PARTICULARLY DESCRIBED IN SAID MORTGAGE, AND HAVING A TAX MAP DESIGNATION OF [DISTRICT] SECTION 61, BLOCK 22, LOT 28, IN THE COUNTY OF Nassau AND STATE OF NEW YORK.

TOGETHER WITH THE BONDS OR NOTES OR OBLIGATIONS DESCRIBED IN SAID MORTGAGE, AND THE MONEYS DUE AND TO GROW DUE THEREON WITH INTEREST; TO HAVE AND TO HOLD THE SAME UNTO THE ASSIGNEE AND TO THE SUCCESSORS, LEGAL REPRESENTATIVES AND ASSIGNS OF THE ASSIGNEE FOREVER.

THIS ASSIGNMENT IS NOT SUBJECT TO THE REQUIREMENTS OF SECTION 275 OF THE REAL PROPERTY LAW BECAUSE THE ASSIGNEE NAMED IN THE ASSIGNMENT IS NOT ACTING AS A NOMINEE OF THE MORTGAGOR UNDER THE MORTGAGE AND THE MORTGAGE BEING ASSIGNED CONTINUES TO SECURE A BONA FIDE OBLIGATION.

THIS ASSIGNMENT IS MADE TO AND ACCEPTED BY THE ASSIGNEE WITHOUT ANY WARRANTY OR REPRESENTATION ON THE PART OF THE ASSIGNOR AND WITHOUT RECOURSE TO THE ASSIGNOR IN ANY EVENT WHATSOEVER. ASSIGNEE EXPRESSLY AGREES THAT IN ACCEPTING THIS ASSIGNMENT OF MORTGAGE ASSIGNEE HAS NOT RELIED ON ANY REPRESENTATION WHATSOEVER MADE BY ASSIGNOR.

THE WORD "ASSIGNOR" OR "ASSIGNEE" SHALL BE CONSTRUED AS IF IT READ "ASSIGNORS" OR "ASSIGNEES" WHENEVER THE SENSE OF THIS INSTRUMENT SO REQUIRES.

IN WITNESS WHEREOF, THE ASSIGNOR HAS DULY EXECUTED THE
ASSIGNMENT EFFECTIVE AS OF _____ 11/24/12 _____.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., as nominee for
CITIMORTGAGE, INC.


By: _____
Name/Title: Aaron Menne,
            Assistant Secretary


STATE OF MISSOURI, COUNTY OF ST CHARLES, SS

On ____ 11/29/10 _____, before me, the undersigned, personally
appeared Aaron Menne, personally known to me or proved to me on
the basis of satisfactory evidence to be the individual whose
name is subscribed to the within instrument and acknowledged to
me that he/she executed the same in his/her capacity, that by
his/her signature on the instrument, the individual or the
person upon behalf of which the individual acted, executed the
instrument, and that such individual made such appearance before
the undersigned in the O'Fallon (City), and State of Missouri.

ALEX D CROSSMAN
Notary Public - Notary Seal
State of Missouri
St. Charles County
Commission #08672776
My Commission Expires 11/04/2012

Notary Public



File Location
# SRV RLS

| Shelf Loc | Section | Pool # | Portfolio |
|---|---|---|---|
| | TDFNMA | | A |

| Comp Code | Loan Number | Doc Type | Batch # |
|---|---|---|---|
| | | ASN | |

| User | Borrower Name | Ln Type | Date Processed |
|---|---|---|---|
| | RENEE TAMMARO | 1 | 4/16/2014 |

**Batch Type:** 1st MTG Collateral      Del Coun Cd   **XZM**



**Loan  Doc Nbr**
Patch Code 2

Modified: 09/13/07          Printed: 4/16/2014





NASSAU COUNTY CLERK'S OFFICE
ENDORSEMENT COVER PAGE

Recorded Date: 03-18-2014
Recorded Time: 10:31:26 a

Liber Book: M 39575
Pages From: 495
To: 497

Record and Return To:
CITIMORTGAGE INC
C/O NATIONWIDE TITLE CLEARING INC
2100 ALT 19 NORTH
PALM HARBOR, FL 34683

Control
Number: 528
Ref #:
Doc Type: M23 ASSIGN MORTGAGE

Refers to: Book: M 33002 Page: 24

Location:                     Section Block    Lot    Unit
HEMPSTEAD (2820)              0061   00022-00 00028

Taxes Total                .00
Recording Totals        205.00
AAR001                              Total Payment           205.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
MAUREEN O'CONNELL
COUNTY CLERK

When Recorded Return To:
CitiMortgage, Inc.
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments. FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, CITIMORTGAGE, INC.,WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO, 63368, (ASSIGNOR),

by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same may have been consolidated, extended or modified, including all mortgages that have been consolidated therewith, with all interest secured thereby, all liens, and any rights due or to become due thereon to FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 100, DALLAS, TX 75254, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).

Said Mortgage is dated 05/20/2008, made by RENEE TAMMARO to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIMORTGAGE, INC. in the principal sum of $375,000.00, and recorded on 05/23/2008 in Liber M 33002, Page 24, CRFN # 2008052301732, in the office of the Registry of NASSAU County, NY.

Property is commonly known as: 94 GARDEN CITY AVE,
POINT LOOKOUT, NY 11569.

See Exhibit attached for Assignments, Modifications etc.
This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated on ___2__ / _11_ /2014 (MM/DD/YYYY).
CITIMORTGAGE, INC.

By: _____

Marguerita Witzigman     VICE PRESIDENT
All Authorized Signatories whose signatures appear above have reviewed this document and supporting documentation prior to signing.

By: _____

Daniel Thompson     Witness

STATE OF FLORIDA     COUNTY OF PINELLAS
Before me, on ___2__ / _11_____/2014 (MM/DD/YYYY), the undersigned, personally appeared Marguerita Witzigman as VICE PRESIDENT for CITIMORTGAGE, INC., personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Nicole Baldwin
Notary Public - State Of FLORIDA
Commission expires: 08/05/2016

Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

Exhibit

Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CITIMORTGAGE, INC. TO CITIMORTGAGE, INC. DATED 11-29-2010. EFFECTIVE DATE 11-29-2010. REC: 01-25-2011 BK M 35625 PG 626 INSTR# 2011012501154

Instrument Number: 2021-89796

Recorded As:   EX-M23 - ASSIGN MORT

Recorded On:   July 08, 2021

Recorded At:   11:45:33 am          Receipt Number:   2324041

Number of Pages: 4                  Processed By:     001 DMF

Book-VI/Pg:    Bk-M  VI-45601  Pg-926

Total Rec Fee(s):  $360.00

** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE          $ 60.00    EX-Blocks - Mortgages - $300        $ 300.00

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 61 | 22 | 28 | | HEMPSTEAD |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



Maureen O'Connell

**County Clerk Maureen O'Connell**

# **** Electronically Filed Document ****

Instrument Number: 2017-66950

Recorded As: EX-M23 - ASSIGN MORT

Recorded On: July 10, 2017

Recorded At: 03:29:43 pm          Receipt Number:  729767

Number of Pages: 3                Processed By:   001 DMF

Book-Vl/Pg: Bk-M VI-42229 Pg-446

Total Rec Fee(s): $355.00

** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE          $ 55.00      EX-Blocks - Mortgages - $300      $ 300.00

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---------|-------|-----|------|-----------|
| 61 | 22 | 28 | | HEMPSTEAD |

------------------------------------------------------------------------

## ************THIS PAGE IS PART OF THE INSTRUMENT ************

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



*Maureen O'Connell*

**County Clerk Maureen O'Connell**

When Recorded Return To:
Fannie Mae
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL NATIONAL MORTGAGE ASSOCIATION, WHOSE ADDRESS IS 14221 DALLAS PARKWAY, SUITE 1000, DALLAS, TX 75254, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage, as the same may have been consolidated, extended or modified, including all mortgages that have been consolidated therewith, with all interest secured thereby, all liens, and any rights due or to become due thereon to **MTGLQ INVESTORS, L.P., WHOSE ADDRESS IS 6011 CONNECTION DR., IRVING, TX 75039, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE),.**

Said Mortgage is dated 05/20/2008, made by **RENEE TAMMARO** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS** in the principal sum of $375,000.00, and recorded on 05/23/2008 in **Book M 33002, Page 24 and Instrument # 2008052301732,** in the office of the Registry of **NASSAU** County, **NY.**

Property is commonly known as: 94 GARDEN CITY AVE,
POINT LOOKOUT, NY 11569.

See Exhibit attached for Assignments, Modifications etc.

This Assignment is not subject to the requirements of section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

Dated this 06th day of July in the year 2017.
**FEDERAL NATIONAL MORTGAGE ASSOCIATION, by NATIONWIDE TITLE CLEARING, INC., Its Attorney-in-Fact (POA RECORDED: 06/22/2017 INSTR: 2017-61571 BK: 13523 PG: 340)**

**SUSAN SCHOTSCH**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**DANIELLE BURNS**
**WITNESS**

STATE OF FLORIDA    COUNTY OF PINELLAS
Before me, this 06th day of July in the year 2017, the undersigned, personally appeared **Susan Schotsch** as VICE PRESIDENT for **NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for FEDERAL NATIONAL MORTGAGE ASSOCIATION,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that they executed the same in their capacity(ies), and that by their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

**EWA IWONA KIRSANOV**
**COMM EXPIRES: 10/13/2020**



EWA IWONA KIRSANOV
Notary Public - State of Florida
Commission # GG 038556
My Comm. Expires Oct 13, 2020
Bonded through National Notary Assn.

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

Loan No: ███████

## Exhibit

Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS TO CITIMORTGAGE, INC. DATED 11-29-2010, EFFECTIVE DATE 11-29-2010, REC: 01-25-2011 BK M 55625 PG 626 INSTR# 2011012501154
Assignment: CITIMORTGAGE, INC. TO FEDERAL NATIONAL MORTGAGE ASSOCIATION DATED 02-11-2014, REC: 03-18-2014 BK M 59575 PG 495 INSTR# 2014031800528

# **** Electronically Filed Document ****

**Instrument Number:** 2021-89796

**Recorded As:** EX-M23 - ASSIGN MORT

**Recorded On:** July 08, 2021

**Recorded At:** 11:45:33 am          **Receipt Number:** 2324041

**Number of Pages:** 4               **Processed By:** 001 DMF

**Book-Vl/Pg:** Bk-M  Vl-45601  Pg-926

**Total Rec Fee(s):** $360.00

** Examined and Charged as Follows **

23 - ASSIGN MORTGAGE          $ 60.00     EX-Blocks - Mortgages - $300          $ 300.00

Property Information:

| Section | Block | Lot | Unit | Town Name |
|---|---|---|---|---|
| 61 | 22 | 28 | | HEMPSTEAD |

***********THIS PAGE IS PART OF THE INSTRUMENT ***********

Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.



Maureen O'Connell
**County Clerk Maureen O'Connell**

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(239) 351-2442

_____ Space above for Recorder's use _____

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MTGLQ INVESTORS, L.P.**, whose address is **2001 ROSS AVENUE SUITE 2800, DALLAS, TEXAS 75201**, (ASSIGNOR), does hereby grant, assign and transfer to **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST**, whose address is **C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **5/20/2008**
Original Loan Amount: **$375,000.00**
Executed by (Borrower(s)): **RENEE TAMMARO**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume M33002, Page 24
Document/Instrument No: **2008052301732; REF#: CZ 009034** in the Recording District of **Nassau, NY**, Recorded on 5/23/2008. MUNICIPALITY: **TOWN OF HEMPSTEAD**

Chain Exhibit: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **94 GARDEN CITY AVE, POINT LOOKOUT, NEW YORK 11569**

*This assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.*

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 6/14/2021

MTGLQ INVESTORS, L.P., BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: MARK THOMAS WATERMAN

Title: VICE PRESIDENT

Witness Name: MONICA HASTEY-MCMAHON

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of **FLORIDA**
County of **PINELLAS**

On 6/14/2021, before me, **WANDA M. HIATT**, a Notary Public, personally appeared **MARK THOMAS WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR MTGLQ INVESTORS, L.P.**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that **MARK THOMAS WATERMAN**, signed, sealed, attested and delivered this document as a voluntary act in my presence in the County of **PINELLAS**, State of **FLORIDA.**

Witness my hand and official seal.

(Notary Name): **WANDA M. HIATT**
My commission expires: **11/8/2024**

WANDA M. HIATT
MY COMMISSION # HH54376
EXPIRES: November 08, 2024

## EXHIBIT "A"
## Assignment Chain

| | |
|---|---|
| Lender: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS |
| Borrower: | RENEE TAMMARO |
| Origination Balance: | $375,000.00 |
| Origination Date: | 5/20/2008 |
| Mortgage Recording Details: | Recorded: 05/23/2008; Book: M33002; Page: 24; Instrument: 2008052301732; REF#: CZ 009034 MUNICIPALITY: TOWN OF HEMPSTEAD |

| | |
|---|---|
| Assigned From: | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR CITIMORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS |
| To: | CITIMORTGAGE, INC. |
| AOM Dated: | 11/29/2010 |
| AOM Recording Details: | Recorded 01/25/2011; Book: M35625; Page: 626; Instrument: 2011012501154 |

| | |
|---|---|
| Assigned From: | CITIMORTGAGE, INC. |
| To: | FEDERAL NATIONAL MORTGAGE ASSOCIATION |
| AOM Dated: | 02/11/2014 |
| AOM Recording Details: | Recorded 03/18/2014; Book: M39575; Page: 495; Instrument: 2014031800528 |

| | |
|---|---|
| Assigned From: | FEDERAL NATIONAL MORTGAGE ASSOCIATION |
| To: | MTGLQ INVESTORS, LP |
| AOM Dated: | 07/06/2017 |
| AOM Recording Details: | Recorded 07/10/2017; Book: M42229; Page: 446; Instrument: 2017-66950 |

# EXHIBIT "B"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION
-----------------------------------------------------x

In re:

Renee Tammaro,

        Debtor.

-----------------------------------------------------x

Case No. 8-23-72289-las

Chapter 13

**Hon. Louis A. Scarcella**

---

## RELIEF FROM STAY – REAL ESTATE AND COOPERATIVE APARTMENTS

### BACKGROUND INFORMATION

1. ADDRESS OF REAL PROPERTY OR COOPERATIVE APARTMENT: 94 GARDEN CITY, POINT LOOKOUT, New York 11569

2. LENDER NAME: U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF2 ACQUISITION TRUST

3. MORTGAGE DATE: May 20, 2008

4. POST-PETITION PAYMENT ADDRESS: Selene Finance LP, 3501 Olympus Boulevard 5th Floor, Suite 500 Dallas, Texas 75019

### DEBT AND VALUE REPRESENTATIONS

5. TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR TO MOVANT AS OF THE MOTION FILING DATE: $986,008.16 as of September 09, 2023
*(THIS MAY NOT BE RELIED UPON AS A "PAYOFF" QUOTATION.)*

6. MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR COOPERATIVE APARTMENT AS OF THE MOTION FILING DATE: $850,000.00

7. SOURCE OF ESTIMATED MARKET VALUE: Debtor's Schedule A/B

## STATUS OF THE DEBT AS OF THE PETITION DATE

8. DEBTOR'S INDEBTEDNESS TO MOVANT AS OF THE PETITION DATE:

| | | |
|---|---|---|
| A. | Total: | $977,631.41 |
| B. | Principal: | $367,691.53 |
| C. | Interest: | $314,207.33 |
| D. | Escrow (taxes and insurance): | $277,694.70 |
| E. | Forced placed insurance expended by movant: | Included in No. 8D |
| F. | Pre-petition attorneys' fees charged to debtor(s): | Included in No. 10 |
| G. | Pre-petition late fees charged to debtor(s): | $00.0 |

9. CONTRACT INTEREST RATE: __6.37500%__
*(IF THE INTEREST RATE HAS CHANGED, LIST THE RATE(S) AND DATE(S) THAT EACH RATE WAS IN EFFECT ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

10. OTHER PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR(S)'S ACCOUNT AND NOT LISTED ABOVE:  __Fees and Costs: $18,037.85__

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

## AMOUNT OF POST-PETITION DEFAULT
## (AS OF SEPTEMBER 9, 2023)

11. DATE OF RECEIPT OF LAST PAYMENT: __N/A__

12. NUMBER OF PAYMENTS DUE FROM PETITION DATE TO MOTION FILING DATE: __3 PAYMENTS.__

13. POST-PETITION PAYMENTS IN DEFAULT:

| PAYMENT DUE DATE | AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED |
|---|---|---|---|---|---|---|
| 7/1/2023 | $4,502.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 8/1/2023 | $4,502.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 9/1/2023 | $4,502.38 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| **TOTAL:** | **$13,507.14** | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

14. Other post-petition fees charged to Debtor:

    A. Total:         $1,238.00

    B. Attorneys' fees in connection with this motion:     $1,050.00

    C. Filing fee in connection with this motion:     $188.00

    D. Other post-petition attorneys' fees:     $0.00

    E. Post-petition inspection fees:     $0.00

    F. Post-petition appraisal/broker's price opinion fees:     $0.00

    G. Forced placed insurance expended by movant:     $0.00

15. AMOUNT HELD IN SUSPENSE BY MOVANT:     $ 0.00

16. OTHER POST-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE: __N/A__

*(IF ADDITIONAL SPACE IS REQUIRED, LIST THE AMOUNT(S) ON A SEPARATE SHEET AND ATTACH THE SHEET AS AN EXHIBIT TO THIS FORM. STATE THE EXHIBIT NUMBER HERE: N/A.)*

# REQUIRED ATTACHMENTS TO MOTION

PLEASE ATTACH THE FOLLOWING DOCUMENTS TO THIS MOTION AND INDICATE THE EXHIBIT NUMBER ASSOCIATED WITH EACH DOCUMENT.

(1)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S INTEREST IN THE SUBJECT PROPERTY. FOR PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE PROMISSORY NOTE OR OTHER DEBT INSTRUMENT TOGETHER WITH A COMPLETE AND LEGIBLE COPY OF THE MORTGAGE AND ANY ASSIGNMENTS IN THE CHAIN FROM THE ORIGINAL MORTGAGEE TO THE CURRENT MOVING PARTY. (Composite EXHIBIT A.)

(2)     COPIES OF DOCUMENTS THAT ESTABLISH MOVANT'S STANDING TO BRING THIS MOTION. (Composite EXHIBIT A.)

(3)     COPIES OF DOCUMENTS THAT ESTABLISH THAT MOVANT'S INTEREST IN THE REAL PROPERTY OR COOPERATIVE APARTMENT WAS PERFECTED. FOR THE PURPOSES OF EXAMPLE ONLY, THIS MAY BE A COMPLETE AND LEGIBLE COPY OF THE FINANCING STATEMENT (UCC-1) FILED WITH THE CLERK'S OFFICE OR THE REGISTER OF THE COUNTY IN WHICH THE PROPERTY OR COOPERATIVE APARTMENT IS LOCATED. (Composite EXHIBIT A.)

# DECLARATION AS TO BUSINESS RECORDS

I, _____Genevieve A. Jacobs_____, THE ___Bankruptcy Specialist_____OF SELENE FINANCE LP AS SERVICER FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF2 ACQUISITION TRUST, THE MOVANT HEREIN, DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE INFORMATION PROVIDED IN THIS FORM AND ANY EXHIBITS ATTACHED HERETO (OTHER THAN THE TRANSACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1 ,2, AND 3, ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS; THAT THE RECORDS WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND THAT THE RECORDS WERE MADE IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER DECLARE THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, ABOVE, ARE TRUE AND CORRECT COPIES OF THE ORIGINAL DOCUMENTS.

EXECUTED AT     Jacksonville  Florida
ON THIS _19th_ DAY OF _September_ , 20_23_

NAME: _____Genevieve A. Jacobs_____
TITLE: _____Bankruptcy Specialist_____
**Movant:** SELENE FINANCE LP AS SERVICER FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF2 ACQUISITION TRUST
**Address:** c/o Selene Finance, 3501 Olympus Blvd, 5th floor, Coppell, TX 75019

# DECLARATION

I,_____Genevieve A. Jacobs_____, THE _____Bankruptcy Specialist_____ OF
SELENE FINANCE LP AS SERVICER FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF2 ACQUISITION TRUST, THE MOVANT HEREIN,
DECLARE PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS
TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS
RECORDS.

EXECUTED AT _____Jacksonville Florida_____
ON THIS __8th__ DAY OF __September__ , 20 __23__

NAME: _____Genevieve A. Jacobs_____
TITLE: _____Bankruptcy Specialist_____
**Movant:** SELENE FINANCE LP AS SERVICER FOR
U.S. BANK TRUST NATIONAL ASSOCIATION, NOT
IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS
OWNER TRUSTEE FOR RCF2 ACQUISITION TRUST
**Address:** c/o Selene Finance, PO Box 422039, Houston,
TX 77242-4239

# EXHIBIT "C"

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | **RENEE TAMMARO** | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | EASTERN DISTRICT OF NEW YORK | | |
| Case number | | | |

☐ Check if this is an amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                    12/15

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:    Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

☐ No. Go to Part 2.

■ Yes.  Where is the property?

1.1

| | |
|---|---|
| **94 Garden City Avenue** | |
| Street address, if available, or other description | |

**What is the property?** Check all that apply

☐ Single-family home
☐ Duplex or multi-unit building
☐ Condominium or cooperative
☐ Manufactured or mobile home
☐ Land
☐ Investment property
☐ Timeshare
☐ Other

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Point Lookout | NY | 11569-0000 |
|---|---|---|
| City | State | ZIP Code |

| **Current value of the entire property?** | **Current value of the portion you own?** |
|---|---|
| $850,000.00 | $850,000.00 |

**Who has an interest in the property?** Check one

■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.

**Fee simple**

| **Nassau** | |
|---|---|
| County | |

☐ **Check if this is community property** (see instructions)

Other information you wish to add about this item, such as local property identification number:

**Debtor's residence  Pending short sale offer for $750,000 which the mortgage holder has not accepted or rejected for the past 6 months**

2.  Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.................................................................=>

| $850,000.00 |
|---|

**Part 2:    Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*